Michael Kind, Esq. (SBN: 13903)
KAZEROUNI LAW GROUP, APC
7854 W. Sahara Avenue
Las Vegas, NV 89117
Phone: (800) 400-6808 x7
FAX: (800) 520-5523
mkind@kazlg.com

Sara Khosroabadi, Esq. (SBN 13703)
HYDE & SWIGART
7854 W. Sahara Avenue
Las Vegas, NV 89117
Phone: (619) 233-7770
Fax: (619) 297-1022
sara@westcoastlitigation.com

David H. Krieger, Esq. (SBN: 9086)
HAINES & KRIEGER, LLC
8985 S. Eastern Avenue, Suite 350
Henderson, Nevada 89123
Phone: (702) 880-5554
FAX: (702) 385-5518
dkrieger@hainesandkrieger.com
*Attorneys for Plaintiff Jennifer A. Lee*

# UNITED STATES DISTRICT COURT
## DISTRICT OF NEVADA

| | |
|---|---|
| Jennifer A. Lee,<br><br>   Plaintiff,<br>v.<br><br>Educators Credit Union, Wells Fargo Home Mortgage, Equifax Information Services LLC, Experian Information Solutions, Inc. and Trans Union LLC,<br><br>   Defendants. | Case No.: 2:17-cv-1215<br><br>**COMPLAINT FOR DAMAGES PURSUANT TO THE FAIR CREDIT REPORTING ACT, 15 U.S.C. § 1681, ET SEQ.**<br><br>**JURY TRIAL DEMANDED** |

# INTRODUCTION

1. The United States Congress has found the banking system is dependent up-on fair and accurate credit reporting. Inaccurate credit reports directly impair the efficiency of the banking system, and unfair credit reporting methods undermine the public confidence, which is essential to the continued functioning of the banking system. Congress enacted the Fair Credit Reporting Act, 15 U.S.C. § 1681 et seq. ("FCRA"), to ensure fair and accurate reporting, promote efficiency in the banking system, and protect consumer privacy. The FCRA seeks to ensure consumer reporting agencies exercise their grave responsibilities with fairness, impartiality, and a respect for the consumer's right to privacy because consumer reporting agencies have assumed such a vital role in assembling and evaluating consumer credit and other information on consumers. The FCRA also imposes duties on the sources that provide credit information to credit reporting agencies, called "furnishers."

2. The FCRA protects consumers through a tightly wound set of procedural protections from the material risk of harms that otherwise flow from inaccurate reporting. Thus, through the FCRA, Congress struck a balance between the credit industry's desire to base credit decisions on accurate information, and consumers' substantive right to protection from damage to reputation, shame, mortification, and the emotional distress that naturally follows from inaccurate reporting of a consumer's fidelity to his or her financial obligations.

3. Jennifer A. Lee ("Plaintiff"), by Plaintiff's attorneys, brings this action to challenge the actions of Defendants Educators Credit Union ("Educators"), Wells Fargo Home Mortgage ("WFHM"), Equifax Information Services LLC ("Equifax"), Experian Information Solutions, Inc. ("Experian") and Trans Union LLC ("Trans Union") (jointly as "Defendants"), with regard to

erroneous reports of derogatory credit information to national reporting agencies and Defendants' failure to properly investigate Plaintiff's disputes.

4. Defendants failed to properly investigate Plaintiff's disputes, damaging Plaintiff's creditworthiness.

## JURISDICTION AND VENUE

5. This Court has federal question jurisdiction because this case arises out of violation of federal law. 15 U.S.C. §1681 et seq.; 28 U.S.C. §1331; *Smith v. Community Citibank, Inc.*, 773 F.Supp.2d 941, 946 (D. Nev. 2011).

6. This action arises out of Defendant's violations of the Fair Credit Reporting Act, 15 U.S.C. §§ 1681-1681(x) ("FCRA").

7. Venue is proper in the United States District Court for the District of Nevada pursuant to 28 U.S.C. § 1391(b) because Plaintiff is a resident of Clark County, the State of Nevada and because Defendants are subject to personal jurisdiction in the County of Clark, State of Nevada as they conduct business there. Venue is also proper because the conduct giving rise to this action occurred in Nevada. 28 U.S.C. § 1391(b)(2).

## PARTIES

8. Plaintiff is a natural person residing in the County of Clark, State of Nevada. In addition, Plaintiff is a "consumer" as that term is defined by 15 U.S.C. § 1681a(c).

9. Defendant Educators is a corporation doing business in the State of Nevada.

10. Defendant WFHM is a corporation doing business in the State of Nevada.

11. Defendant Equifax is a corporation doing business in the State of Nevada.

12. Defendant Experian is a corporation doing business in the State of Nevada.

13. Defendant Trans Union is a corporation doing business in the State of Nevada.

14. Defendants Educators and WFHM are furnishers of information as contemplated by 15 U.S.C. § 1681s-2(b) that regularly and in the ordinary course of business furnish information to a consumer credit reporting agency.

15. Defendants Trans Union LLC, Experian and Equifax regularly assemble and/or evaluate consumer credit information for the purpose of furnishing consumer reports to third parties and use interstate commerce to prepare and/or furnish the reports. Equifax and Trans Union LLC are each a "consumer reporting agency" as that term is defined by 15 U.S.C. §1681a(f).

16. Unless otherwise indicated, the use of Defendants' names in this Complaint includes all agents, employees, officers, members, directors, heirs, successors, assigns, principals, trustees, sureties, subrogees, representatives, and insurers of the named Defendant.

## GENERAL ALLEGATIONS

17. On or about August 31, 2011, Plaintiff filed for Chapter 13 Bankruptcy in the United States Bankruptcy Court for the District of Nevada pursuant to 11 U.S.C. §1301 et seq. Plaintiff's case was assigned Case Number 11-24029 (the "Chapter 13" or "Bankruptcy").

18. The obligations ("Debt") to each Defendant herein (as applicable) were scheduled in the Bankruptcy and each respective creditor-Defendant, or its predecessor in interest, received notice of the Bankruptcy.

19. On November 22, 2011, the Plaintiff's Chapter 13 Plan was confirmed (the "Confirmed Chapter 13 Plan" or "Confirmation Order").

20. A confirmed plan constitutes a new contract between the debtor and creditors and a creditor's rights are defined by the confirmed plan. Consequently, a pre-petition claim provided for in a confirmed plan is no longer a pre-petition claim. The claim is a right to payment arising from the confirmed plan. *Padilla v. Wells Fargo Home Mortg., Inc. (In re Padilla)*, 379 B.R. 643, 649, 2007 Bankr. LEXIS 2655, *1 (Bankr. S.D. Tex. 2007).

21. Plaintiff made all payments required under the terms of the Confirmed Chapter 13 plan.

22. None of the Defendants named herein filed any proceedings to declare their alleged debts "non-dischargeable" pursuant to 11 U.S.C. § 523 et seq.

23. None of the Defendants named herein obtained relief from the "automatic stay" codified at 11 U.S.C. §362 et seq. while the Plaintiff's Bankruptcy was pending to pursue the Plaintiff for any *personal* liability.

24. Accordingly, the debts to each Defendant named herein (as applicable) were discharged through the Bankruptcy on August 10, 2015.

25. Further, while the automatic stay was in effect during the Bankruptcy, it was illegal and inaccurate for any of the creditor-defendants to report any post-Bankruptcy derogatory collection information, which was inconsistent with the Orders entered by the Bankruptcy Court.

26. However, Defendants either reported or caused to be reported inaccurate information as discussed herein after Plaintiff's debts were discharged.

27. Defendants' reporting post-Bankruptcy derogatory information was inaccurate and misleading in that each Defendant continued reporting information based on Defendants' pre-bankruptcy contract terms with Plaintiff, which were no longer enforceable upon the bankruptcy filing, thereby rendering the disputed information "inaccurate."

28. The adverse information reported by Defendants was based on each respective Defendant's improper enforcement and reporting of pre-bankruptcy obligations, where such reporting failed to comply with the payment structure set forth in the Plaintiff's Chapter 13 Plan. Failing to report consistent with the terms of the Chapter 13 plan was therefore inaccurate, since all the Plaintiff's pre-bankruptcy creditors (whether eventually discharged or not) were subject to repayment pursuant to the Chapter 13 plan terms while the Bankruptcy was pending.

29. Additionally, Defendant's inaccurate reporting did not comply with the Consumer Data Industry Association's Metro 2 reporting standards, which provides guidance for credit reporting and FCRA compliance.

30. The Consumer Data Industry Association ("CDIA") publishes the Metro 2 ("Metro 2") reporting standards to assist furnishers with their compliance requirements under the FCRA.

31. Courts rely on such guidance to determine furnisher liability. *See e.g. In re Helmes*, 336 B.R. 105, 107 (Bankr. E.D. Va. 2005) (finding that "industry standards require that a debt discharged in bankruptcy be reported to a credit reporting agency with the notation `Discharged in bankruptcy' and with a zero balance due").

32. On information and belief, Defendants herein adopted and at all times relevant implemented the Metro 2 format.

33. On information and belief, each furnisher-Defendant named herein adopted the Metro 2 reporting standards and at all times relevant implemented the Metro 2 format as an integral aspect of their respective duties under the FCRA to have in place adequate and reasonable policies and procedures to handle investigations of disputed information.

34. The Metro 2 format guidelines for credit reporting are nearly identical for reports made during the "Month BK Filed," "Months Between Petition Filed and BK Resolution," and after "Plan Completed" for Chapter 13 Debtors and furnishers who choose to report post-bankruptcy credit information to CRAs. *See, e.g.*, 2015 CDIA Credit Reporting Resource Guide ("2015 Metro 2"), Frequently Asked Question 28(a), at pages 6-21 – 6-22.

35. Thus, many of the consumer reporting fields should be reported the same way both during and after a bankruptcy proceeding, *Id..*, with the following relevant exceptions:

    a.    <u>Current Balance</u>

        i.    For the "Month BK Filed" and "Months Between Petition Filed & BK Resolution," Metro 2 instructs the furnisher to report the outstanding balance amount. *Id*.

        ii.    However, for the "Plan Confirmed" period, Metro 2 instructs the furnisher to report the "Chapter 13 plan balance, which should decline as payments are made." *Id*. at 6-22.

        iii.    And, for Current Balance reporting when "Plan Completed – All payments made according to plan – no further obligation," Metro 2 instructs the furnisher to report a current balance of "Zero." *Id*.

    b.    <u>Scheduled Monthly Payment Amount:</u>

        i.    For the "Month BK Filed" and "Months Between Petition Filed & BK Resolution," Metro 2 instructs the furnisher to report the "contractual monthly payment amount." *Id*. at 6-21.

        ii.    However, for the "Plan Confirmed" period, Metro 2 instructs the furnisher to report the "Chapter 13 Payment Amount." *Id*. at 6-22.

        iii.    And, for Scheduled Monthly Payment Amount reporting when "Plan Completed – All payments made according to plan – no further obligation," Metro 2 instructs the furnisher to report a current balance of "Zero." *Id*.

36. Despite Metro 2 Format's instructions, each furnisher-Defendant named herein failed to conform to the Metro 2 Format when reporting on Plaintiff's accounts after the Plaintiff filed Bankruptcy as further set forth below.

37. In turn, each of the credit reporting agencies named herein, rereported the inaccurate information, thus violating their duty to follow reasonable procedures to assure maximum possible accuracy under 15 U.S.C. § 1681e(b) when preparing a consumer report.

38. To this end, the adverse reporting on the Plaintiff's consumer report departed from the credit industry's own reporting standards and was not only inaccurate, but also materially misleading under the CDIA's standards as well.

39. A "materially misleading" statement is concerned with omissions to credit entries, that in context create misperceptions about otherwise may be factually accurate data. *Gorman v. Wolpoff & Abramson, LLP*, 584 F.3d 1147, 1163 (9th Cir. 2009).

— THE EQUIFAX VIOLATIONS —

EQUIFAX MISREPORTED CREDIT INFORMATION

AND FAILED TO INVESTIGATE PLAINTIFF'S DISPUTE

RE: ALLIED ACCOUNT NO. **5701

RE: EDUCATORS ACCOUNT NO. **1488

40. In a Equifax credit report dated February, 2016, Equifax inaccurately reported that Plaintiff owed an outstanding balance of $134 to Allied Collection Service ("Allied"). This was inaccurate because Plaintiff received a discharge in August 2015 and no longer owed an outstanding balance to Allied and did not owe $134.

41. Furthermore, in the same Equifax credit report dated February, 2016, Equifax inaccurately reported that Plaintiff owed an outstanding balance of $528 to Educators. This was inaccurate because Plaintiff received a discharge in August 2015 and no longer owed an outstanding balance to Educators and did not owe $528.

42. On April 14, 2016, Plaintiff disputed Equifax's reporting regarding the debt pursuant to 15 U.S.C. § 1681i by notifying Equifax, in writing, of the incorrect and inaccurate credit information.

43. Specifically, Plaintiff sent a letter, certified, return receipt, to Equifax, requesting the above inaccurate and incorrect derogatory information be updated, modified or corrected.

44. Equifax was required to conduct a reinvestigation into this specific debt on Plaintiff's consumer report pursuant to 15 U.S.C. §1681i
45. However, Plaintiff never received any notification from Equifax that Equifax investigated or reinvestigated Plaintiff's dispute, as required under 15 U.S.C. § 1681i(a)(6).
46. A reasonable investigation by Equifax would have indicated that Plaintiff did not have any balance for these debts.
47. Equifax failed to review all relevant information provided by Plaintiff in the dispute to Equifax, as required by and in violation of 15 U.S.C. § 1681i.
48. Upon information and belief, Equifax re-reported the inaccurate derogatory information on Plaintiff's report. Specifically, upon information and belief, Equifax re-reported the that Plaintiff owed outstanding balances to Allied and Educators even though the debts were, in fact, discharged in Plaintiff's bankruptcy and Plaintiff did not owe any balance.
49. Equifax, upon receipt of Plaintiff's dispute, failed to conduct an investigation or reinvestigation with respect to the disputed information as required by 15 U.S.C. § 1681i.
50. equifax failed to review all relevant information provided by Plaintiff in the dispute to Equifax, as required by and in violation of 15 U.S.C. § 1681i.
51. Due to Equifax's failure to reasonably investigate, it further failed to correct and update Plaintiff's information as required by 15 U.S.C. § 1681i, thereby causing continued reporting of inaccurate information in violation of 15 U.S.C. § 1681i.
52. Equifax's continued inaccurate and negative reporting of the Debt in light of their knowledge of the actual error was willful. Plaintiff is, accordingly, eligible for statutory damages.
53. Also as a result of Equifax's continued inaccurate and negative reporting, Plaintiff has suffered actual damages, including without limitation credit

denials, higher interest rates, out-of-pocket expenses in challenging Defendants' inaccurate reporting, damage to Plaintiff's creditworthiness, emotional distress and mental anguish and harm to Plaintiff's reputation.

54. Further, Plaintiff was forced to incur the cost of disputing Equifax's inaccurate reporting, again, on July 1, 2016, causing Plaintiff further out-of-pocket expenses.

55. By inaccurately reporting account information after notice and confirmation of its errors, Equifax failed to take the appropriate measures as required under 15 U.S.C. § 1681i.

— THE EXPERIAN VIOLATIONS —

WFHM AND EXPERIAN MISREPORTED CREDIT INFORMATION

RE: ACCOUNT NO. **0977

56. On or about April 14, 2016, Plaintiff disputed WFHM's inaccurate reporting, including inaccurate "late" notations when Plaintiff was not late, pursuant to 15 U.S.C. § 1681i(a)(2) by notifying Experian, in writing, of the incorrect and inaccurate credit information furnished by WFHM.

57. Specifically, Plaintiff sent a letter, certified, return receipt, to Experian, requesting the above inaccurate and incorrect derogatory information be removed as follows:

> You reported that I made the following late payment(s) after filing my Bankruptcy:
>
> September 2011-150 days late
> December 2012-30 days late
> January 2013-30 days late
> February 2013-30 days late
> March 2013-30 days late
> April 2013-30 days late
> May 2013-30 days late
> June 2013-30 days late
> July 2013-30 days late

> This was inaccurate in itself since I was current with all obligations due to Wells Fargo Home Mortgage for these dates as required after my Bankruptcy was filed and it was inaccurate to state I was "late" during any of these dates, since I was fully and timely performing any duties owed to Wells Fargo Home Mortgage during the above date(s). Accordingly, please immediately correct the above inaccurate "late" notations to reflect that I was current and maintaining my obligations to Wells Fargo Home Mortgage. If you do not immediately make these corrections on my credit report, please include a 100 word statement in my credit report of all of the disputed information contained in this letter regarding this account.

58. Upon receiving that letter, Experian timely notified WFHM of Plaintiff's dispute, but Experian and WFHM continued reporting inaccurate information.

59. Experian and WFHM were required to conduct an investigation into this specific account on Plaintiff's consumer report pursuant to 15 U.S.C. §1681i and 15 U.S.C. §1681s-2(b).

60. On or about May 5, 2016, Plaintiff received notification from Experian that Experian received notice of Plaintiff's dispute pursuant to 15 U.S.C. § 1681i(a)(6).

61. A reasonable investigation by these Defendants would have indicated that Plaintiff received a bankruptcy discharge and timely made all payments under the Chapter 13 Plan.

62. Experian and WFHM failed to review all relevant information provided by Plaintiff in the dispute to Experian, as required by and in violation of 15 U.S.C. § 1681i and 15 U.S.C. § 1681s-2(b)(1)(B).

63. Experian and WFHM continued to report inaccurate derogatory information on Plaintiff's report. Specifically, Experian and WFHM reported that Plaintiff owed a recent balance as of April 2016, balances from September 2015 through March 2016 and that Plaintiff was "late from December 2012 through July 2012. Furthermore, Experian and WFHM failed to notate that the debt

was included in bankruptcy.  This was inaccurate and misleading since Plaintiff received a bankruptcy discharge in August 2015.

64. Experian and WFHM, upon receipt of Plaintiff's dispute, failed to conduct a reasonable investigation as required by 15 U.S.C. § 1681i and 15 U.S.C. § 1681s-2(b)(1)(A), respectively.

65. Experian and WFHM failed to review all relevant information provided by Plaintiff in the dispute to Experian, as required by and in violation of 15 U.S.C. § 1681i and 15 U.S.C. § 1681s-2(b)(1)(B), respectively.

66. Due to the failure by Experian and WFHM to reasonably investigate, they further failed to correct and update Plaintiff's information as required by 15 U.S.C. § 1681i and 15 U.S.C. § 1681s-2(b)(1)(E), thereby causing continued reporting of inaccurate information in violation of 15 U.S.C. § 1681i and 15 U.S.C. § 1681-s(2)(b)(1)(C).

67. Plaintiff's continued efforts to correct the erroneous and negative reporting of the Debt by Experian and WFHM by communicating Plaintiff's dispute with Experian and WFHM were fruitless.

68. Experian and WFHM willfully continued to inaccurately and negatively report the debt because they had knowledge of the actual error.  Plaintiff is, accordingly, eligible for statutory damages.

69. Also as a result of the continued inaccurate and negative reporting by Experian and WFHM, Plaintiff has suffered actual damages, including without limitation credit denials, out-of-pocket expenses in challenging the Defendants' wrongful representations, damage to Plaintiff's creditworthiness, and emotional distress, including humiliation, fear, stress and anxiety.

70. By inaccurately reporting account information relating to the debt after notice and confirmation of their errors, Experian and WFHM failed to take the appropriate measures as required under 15 U.S.C.§§ 1681i and 15 U.S.C. §§ 1681-s(2)(b)(1)(D) and (E).

**EDUCATORS AND EXPERIAN MISREPORTED CREDIT INFORMATION**
**RE: ACCOUNT NO. **1488**

71. On or about April 14, 2016, Plaintiff disputed Educators's inaccurate reporting, including inaccurate "charge off" notations, pursuant to 15 U.S.C. § 1681i(a)(2) by notifying Experian, in writing, of the incorrect and inaccurate credit information furnished by Educators.

72. Specifically, Plaintiff sent a letter, certified, return receipt, to Experian, requesting the above inaccurate and incorrect derogatory information be removed as follows:

> You reported that Educators Credit Union "charged off" the account on the following date(s): September 2011. First, the "charge off" should have occurred, if at all, no later than my Bankruptcy filing date and reporting Educators Credit Union charged off this account any date after my Bankruptcy filing date was inaccurate. Moreover, an account can only be charged off one time, so as applicable please remove any duplicative notations that my account was charged off on more than one occasion. Accordingly, please immediately correct the above inaccurate "charge off" notation(s). If you do not immediately make these corrections on my credit report, please include a 100 word statement in my credit report of all of the disputed information contained in this letter regarding this account.

73. Upon receiving that letter, Experian timely notified Educators of Plaintiff's dispute, but Experian and Educators continued reporting inaccurate information.

74. Experian and Educators were required to conduct an investigation into this specific account on Plaintiff's consumer report pursuant to 15 U.S.C. §1681i and 15 U.S.C. §1681s-2(b).

75. On or about May 5, 2016, Plaintiff received notification from Experian that Experian received notice of Plaintiff's dispute pursuant to 15 U.S.C. § 1681i(a)(6).

76. A reasonable investigation by these Defendants would have indicated that Plaintiff received a bankruptcy discharge and timely made all payments under the Chapter 13 Plan.

77. Experian and Educators failed to review all relevant information provided by Plaintiff in the dispute to Experian, as required by and in violation of 15 U.S.C. § 1681i and 15 U.S.C. § 1681s-2(b)(1)(B).

78. Experian and Educators continued to report inaccurate derogatory information on Plaintiff's report. Specifically, Experian and Educators reported that Plaintiff owed a "recent balance" of $528 as of May 2016, a notation stating "$538 written off," balances from September 2015 through April 2016 and multiple "charge off" notations, even though the debt could not be charged off more than once. Furthermore, Experian and Educators failed to notate that the debt was included in bankruptcy. This was inaccurate and misleading since Plaintiff received a bankruptcy discharge in August 2015.

79. Experian and Educators, upon receipt of Plaintiff's dispute, failed to conduct a reasonable investigation as required by 15 U.S.C. § 1681i and 15 U.S.C. § 1681s-2(b)(1)(A), respectively.

80. Experian and Educators failed to review all relevant information provided by Plaintiff in the dispute to Experian, as required by and in violation of 15 U.S.C. § 1681i and 15 U.S.C. § 1681s-2(b)(1)(B), respectively.

81. Due to the failure by Experian and Educators to reasonably investigate, they further failed to correct and update Plaintiff's information as required by 15 U.S.C. § 1681i and 15 U.S.C. § 1681s-2(b)(1)(E), thereby causing continued reporting of inaccurate information in violation of 15 U.S.C. § 1681i and 15 U.S.C. § 1681-s(2)(b)(1)(C).

82. Plaintiff's continued efforts to correct the erroneous and negative reporting of the Debt by Experian and Educators by communicating Plaintiff's dispute with Experian and Educators were fruitless.

83. Experian and Educators willfully continued to inaccurately and negatively report the debt because they had knowledge of the actual error. Plaintiff is, accordingly, eligible for statutory damages.

84. Also as a result of the continued inaccurate and negative reporting by Experian and Educators, Plaintiff has suffered actual damages, including without limitation credit denials, out-of-pocket expenses in challenging the Defendants' wrongful representations, damage to Plaintiff's creditworthiness, and emotional distress, including humiliation, fear, stress and anxiety.

85. By inaccurately reporting account information relating to the debt after notice and confirmation of their errors, Experian and Educators failed to take the appropriate measures as required under 15 U.S.C.§§ 1681i and 15 U.S.C. §§ 1681-s(2)(b)(1)(D) and (E).

### EXPERIAN MISREPORTED CREDIT INFORMATION
### RE: SPRINGLEAF ACCOUNT NO. **0448

86. In a Experian credit report dated February 9, 2016, Experian inaccurately reported multiple "charge off" notations on Plaintiff's consumer report as from January though September 2011 in connection with a Springleaf Financial Services ("Springleaf") account. This was inaccurate because Plaintiff filed for bankruptcy in August 2011. Furthermore, it was not possible for the debt to be "charged off" more than once and Experian's reporting was therefore inaccurate and misleading.

87. On April 14, 2016, Plaintiff disputed Experian's reporting regarding the debt pursuant to 15 U.S.C. § 1681i by notifying Experian, in writing, of the incorrect and inaccurate credit information.

88. Specifically, Plaintiff sent a letter, certified, return receipt, to Experian, requesting the above inaccurate and incorrect derogatory information be updated, modified or corrected.

89. Experian was required to conduct a reinvestigation into this specific debt on Plaintiff's consumer report pursuant to 15 U.S.C. §1681i

90. On or about May 5, 2016, Plaintiff received a notification from Experian that Experian investigated or reinvestigated Plaintiff's dispute, as required under 15 U.S.C. § 1681i(a)(6).

91. A reasonable investigation by Experian would have indicated that Plaintiff did not have any balance for these debts.

92. Experian failed to review all relevant information provided by Plaintiff in the dispute to Experian, as required by and in violation of 15 U.S.C. § 1681i.

93. Experian re-reported the inaccurate derogatory information on Plaintiff's report. Specifically, Experian inaccurately rereported multiple "charge off" notations on Plaintiff's consumer report. This was inaccurate because it was not possible for the debt to be "charged off" more than once and Experian's reporting was therefore inaccurate and misleading.

94. Experian, upon receipt of Plaintiff's dispute, failed to conduct an investigation or reinvestigation with respect to the disputed information as required by 15 U.S.C. § 1681i.

95. Experian failed to review all relevant information provided by Plaintiff in the dispute to Experian, as required by and in violation of 15 U.S.C. § 1681i.

96. Due to Experian's failure to reasonably investigate, it further failed to correct and update Plaintiff's information as required by 15 U.S.C. § 1681i, thereby causing continued reporting of inaccurate information in violation of 15 U.S.C. § 1681i.

97. Experian's continued inaccurate and negative reporting of the Debt in light of their knowledge of the actual error was willful. Plaintiff is, accordingly, eligible for statutory damages.

98. Also as a result of Experian's continued inaccurate and negative reporting, Plaintiff has suffered actual damages, including without limitation credit

denials, higher interest rates, out-of-pocket expenses in challenging Defendants' inaccurate reporting, damage to Plaintiff's creditworthiness, emotional distress and mental anguish and harm to Plaintiff's reputation.

99. By inaccurately reporting account information after notice and confirmation of its errors, Experian failed to take the appropriate measures as required under 15 U.S.C. § 1681i.

## — THE TRANS UNION VIOLATIONS —

### TRANS UNION MISREPORTED CREDIT INFORMATION

### RE: SPRINGLEAF ACCOUNT NO. **0448

100. In a Trans Union credit report dated February 10, 2016, Trans Union inaccurately reported that Plaintiff owed an outstanding balance of $1,139 to Springleaf. This was inaccurate because Plaintiff received a discharge in August 2015 and no longer had an outstanding balance and did not owe $1,139.

101. Furthermore, Trans Union inaccurately reported that Plaintiff was past due in the amount of $1,139. This was inaccurate because Plaintiff received a discharge in August 2015 and no longer had an outstanding balance and was not past due in the amount of $1,139.

102. On April 14, 2016, Plaintiff disputed Trans Union's reporting regarding the debt pursuant to 15 U.S.C. § 1681i by notifying Trans Union, in writing, of the incorrect and inaccurate credit information.

103. Specifically, Plaintiff sent a letter, certified, return receipt, to Trans Union, requesting the above inaccurate and incorrect derogatory information be updated, modified or corrected.

104. Trans Union was required to conduct a reinvestigation into this specific debt on Plaintiff's consumer report pursuant to 15 U.S.C. §1681i

105. However, Plaintiff never received any notification from Trans Union that Trans Union investigated or reinvestigated Plaintiff's dispute as to Springleaf, as required under 15 U.S.C. § 1681i(a)(6).

106. A reasonable investigation by TransUnion would have indicated that Plaintiff did not have any balance for this debt.

107. Trans Union failed to review all relevant information provided by Plaintiff in the dispute to Trans Union, as required by and in violation of 15 U.S.C. § 1681i.

108. Trans Union re-reported the inaccurate derogatory information on Plaintiff's report. Specifically, upon information and belief, Trans Union re-reported the that Plaintiff owed an outstanding balance and a past due balance to Springleaf. This was inaccurate because Plaintiff received a discharge in August 2015 and no longer had an outstanding balance and owed a $0 balance.

109. Trans Union, upon receipt of Plaintiff's dispute, failed to conduct an investigation or reinvestigation with respect to the disputed information as required by 15 U.S.C. § 1681i.

110. Trans Union failed to review all relevant information provided by Plaintiff in the dispute to Trans Union, as required by and in violation of 15 U.S.C. § 1681i.

111. Due to Trans Union's failure to reasonably investigate, it further failed to correct and update Plaintiff's information as required by 15 U.S.C. § 1681i, thereby causing continued reporting of inaccurate information in violation of 15 U.S.C. § 1681i.

112. Trans Union's continued inaccurate and negative reporting of the Debt in light of their knowledge of the actual error was willful. Plaintiff is, accordingly, eligible for statutory damages.

113. Also as a result of Trans Union's continued inaccurate and negative reporting, Plaintiff has suffered actual damages, including without limitation credit denials, higher interest rates, out-of-pocket expenses in challenging Defendants' inaccurate reporting, damage to Plaintiff's creditworthiness, emotional distress and mental anguish and harm to Plaintiff's reputation.

114. Further, Plaintiff was forced to incur the cost of disputing Trans Union's inaccurate reporting, again, on June 23, 2016, causing Plaintiff further out-of-pocket expenses.

115. By inaccurately reporting account information after notice and confirmation of their errors, Trans Union failed to take the appropriate measures as required under 15 U.S.C. § 1681i.

## FIRST CAUSE OF ACTION
## VIOLATION OF THE FAIR CREDIT REPORTING ACT
## 15 U.S.C. § 1681, *ET SEQ.*

116. Plaintiff incorporates by reference all of the above paragraphs of this Complaint as though fully stated herein.

117. The foregoing acts and omissions constitute numerous and multiple willful, reckless or negligent violations of the FCRA, including but not limited to each and every one of the above-cited provisions of the FCRA, 15 U.S.C § 1681, *et Seq.*.

118. As a result of each and every willful violation of the FCRA, Plaintiff is entitled to actual damages as the Court may allow pursuant to 15 U.S.C. § 1681n(a)(1); statutory damages pursuant to 15 U.S.C. § 1681n(a)(1); punitive damages as the Court may allow pursuant to 15 U.S.C. § 1681n(a)(2); and reasonable attorney's fees and costs pursuant to 15 U.S.C. § 1681n(a)(3) from Defendants.

119. As a result of each and every negligent noncompliance of the FCRA, Plaintiff is entitled to actual damages as the Court may allow pursuant to 15 U.S.C. §

1681o(a)(1); and reasonable attorney's fees and costs pursuant to 15 U.S.C. § 1681o(a)(2) from Defendants.

## PRAYER FOR RELIEF

Plaintiff respectfully requests the Court grant Plaintiff the following relief against Defendants:

- An award of actual damages pursuant to 15 U.S.C. § 1681n(a)(1);

- An award of statutory damages pursuant to 15 U.S.C. § 1681n(a)(1);

- An award of punitive damages as the Court may allow pursuant to 15 U.S.C. § 1681n(a)(2);

- An award of costs of litigation and reasonable attorney's fees, pursuant to 15 U.S.C. § 1681n(a)(3), and 15 U.S.C. § 1681(o)(a)(1) against Defendants for each incident of negligent noncompliance of the FCRA; and

- Any other relief the Court may deem just and proper.

## TRIAL BY JURY

120. Pursuant to the seventh amendment to the Constitution of the United States of America, Plaintiff is entitled to, and demands, a trial by jury.

DATED this 28th day of April 2017.

Respectfully submitted,

**KAZEROUNI LAW GROUP, APC**

By: /s/ Michael Kind
Michael Kind, Esq.
7854 W. Sahara Avenue
Las Vegas, NV 89117
*Attorneys for Plaintiff*

KAZEROUNI LAW GROUP, APC
7854 W. Sahara Avenue
Las Vegas, NV 89117